# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, § § § | |
| § | CIVIL ACTION 6:20-CV-00477-ADA |
| § | CIVIL ACTION 6:20-CV-00482-ADA |
| Plaintiff, § | |
| § | PATENT CASE |
| v. § | |
| § | |
| DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC., § § § § | JURY TRIAL DEMANDED |
| § | |
| Defendants. § | |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.   Legal Standards ..................................................................................................................1

    A.   Claim Construction Generally.................................................................................1

    B.   Indefiniteness..........................................................................................................2

II.  U.S. Patent No. 7,424,020 (Case No. 6:20-cv-00482)..........................................................3

    A.   "removing, at the network node, the protocol data of a portion of protocol layers from the received data stream" (claim 1) / "removes protocol data from a portion of protocol layers from a data stream" (claim 6)..........................................................................................................3

    B.   "a control unit which *removes protocol data from a portion of protocol layers from a data stream* received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and switches a remaining data stream to be transmitted to one of the terminals via the first interface" (Claim 6)................4

        1.   The term is not indefinite under *IPXL* ......................................................4

        2.   The term is not subject to 35 U.S.C. §112, ¶6...........................................5

    C.   "bus system"............................................................................................................7

III. U.S. Patent No. 8,913,489 (Case No. 6:20-cv-00477) Claim Terms .................................8

        3.   "the first set of port interfaces of the multi-chassis link aggregate" (Claims 1, 8, 15) ..........................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Azure Networks, LLC v. CSR PLC,*
    771 F.3d 1336 (Fed. Cir. 2014) .................................................................................................. 1

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*,
    2:18-CV-546-JRG, 2020 WL 2098197 (E.D. Tex. May 1, 2020) .............................................. 6

*CloudofChange, LLC v. NCR Corp.*,
    No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) ......................... 1, 2

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998) .................................................................................................. 1

*Enzo Biochem, Inc. v. Applera Corp.*,
    599 F.3d 1325 (Fed. Cir. 2010) .................................................................................................. 8

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) .................................................................................................. 5

*MasterMine Software, Inc. v. Microsoft Corp.*,
    874 F.3d 1307 (Fed. Cir. 2017) .................................................................................................. 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ............................................................................................................... 2, 3

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 1

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) .................................................................................................. 2

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................. 2, 7

*Williamson v. Citrix Online*, LLC,
    792 F.3d 1339 (Fed. Cir. 2015) .................................................................................................. 5

**Statutes**

35 U.S.C. § 112 ........................................................................................................................... 2, 4

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") respectfully submits this claim construction brief in support of its proposed constructions.

## I. Legal Standards

### A. Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)*, cert. denied*, 546 U.S. 1170 (2006); *Azure Networks, LLC v. CSR PLC,* 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips,*415 F.3d at 1313. "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant* v. *Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)). Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc.* v. *U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004)).

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer*

*Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365). And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at 1366). "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id*. (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

**B.     Indefiniteness**

The Patent Act requires claims to particularly point out and distinctly claim the subject matter regarded as the inventions. 35 U.S.C. § 112, ¶ 2. To satisfy this requirement, the claim must be read in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014). To establish that a claim is indefinite, a patent challenger must prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## II. U.S. Patent No. 7,424,020 (Case No. 6:20-cv-00482)

### A. "removing, at the network node, the protocol data of a portion of protocol layers from the received data stream" (claim 1) / "removes protocol data from a portion of protocol layers from a data stream" (claim 6)

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Dell's indefiniteness position fails for the following reasons:[1]

***First***, the claim language is clear on its face as reflected by its recitation in claim 1 ("removes protocol data from a ***portion of*** protocol layers") or similarly in claim 6 ("removing … the protocol data of a ***portion of*** protocol layers"). The specification comports with the claim language describing one embodiment where "the network node FSW1 processes the communication protocols ***of one or more*** communication ***layers*** and ***removes the protocol data*** allocated to ***these*** communication ***layers***." '020 patent at 3:29-33. The specification also contemplates scenarios where protocol data is being removed from one or two layers (*e.g.*, "the first … and/or the third layer"). *Id.* at 3:34-37. Given the unambiguous recitation of "a portion of the protocol layers" and the description in the specification, a POSITA would understand that the data need only be removed in at least one protocol layer. Accordingly, the terms are not indefinite because the intrinsic evidence informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus,* 572 U.S. at 910-11.

---

[1] In its Invalidity Contentions and the parties' discussions, Dell has indicated that its indefiniteness allegation relates to the phrase "a portion of protocol layers." See **Ex. A** at 85. Dell has yet to explain why it now seeks the construction of the broader phrases listed in the heading above. WSOU has focused on the "a portion of protocol layers." To the extent Dell identifies other alleged indefinite terms, WSOU will respond in its Reply including raising waiver.

3

*Second*, Dell concedes indefiniteness by asserting an alternative construction of the term addressed in the next section (*i.e.*, "a control unit which removes …"). In particular, the "remove protocol data …" term that Dell claims is indefinite this section is part of the longer term in the next section. Dell then repeats verbatim the "remove protocol data …" term as part of its alleged function under its alternative 35 U.S.C. §112, ¶6 construction. It is logically inconsistent for Dell to claim that the "remove protocol data …" term is indefinite, and then rely on that ***very same*** term verbatim as the function and identifying the corresponding structure under 35 U.S.C. §112, ¶6. Clearly, the "remove protocol data …" term was definite enough for Dell to understand its alleged §112, ¶6 function and then identify an alleged corresponding structure.

> **B.** **"a control unit which *removes protocol data from a portion of protocol layers from a data stream* received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and switches a remaining data stream to be transmitted to one of the terminals via the first interface" (Claim 6)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite. In the alternative: this term is subject to 35 U.S.C. § 112, ¶ 6. ***Function:*** [1] removes protocol data from a portion of protocol layers from a data stream received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and [2] switches a remaining data stream to be transmitted to one of the terminals via the first interface ***Structure:*** control unit CONTR executing function PHN, containing processes P1 to P3 and function SW; and equivalent structures |

Dell proposes two alternative constructions, both of which are erroneous.

> **1.** **The term is not indefinite under *IPXL***

*First*, procedurally, WSOU disputes that Dell has preserved its invalidity basis given its failure to identify such theory in its Invalidity Contentions. Dell merely listed this term as indefinite in its Invalidity Contentions and did not provide any notice of its indefiniteness theory. **Ex. A** at

4

86. In telephone discussions, Dell has since explained that its indefiniteness theory is based solely on *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* 430 F.3d 1377 (Fed. Cir. 2005).

*Second*, turning to the merits, Dell's assertion of *IPXL* lacks merit because this term does not cover "a single claim covering both an apparatus and a method of use of that apparatus." *See MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017) (citing *IPXL*, 430 F.3d at 1384). In particular, the Federal Circuit has since clarified post-IPXL that claims are not indefinite "merely [because the] claim that the system 'possess[es] the recited structure [which is] capable of performing the recited functions.'" *MasterMine*, 874 F.3d at 1316 (discussing cases and quoting *Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008)). Here, just as the claim *MasterMine*, claim 6 includes recited structure ("control unit") which is capable of performing recited functions ("removes protocol data …" and "switches a remaining data stream …"). *See id. IPXL* does not apply when the "focus on the capabilities of the system," as opposed to the claims in *IPXL* that "focus on specific actions performed by the user." *MasterMine*, 874 F.3d at 1316. Here, the claims are focused on the capabilities of the system; the term "user" is not even recited in the claims as was in *IPXL*.

### 2. The term is not subject to 35 U.S.C. §112, ¶6

Dell alleges in the alternative that this term is subject to 35 U.S.C. §112, ¶6.

*First*, the lack of the word "means" in claim 6 terms raises a rebuttable presumption against applying Section 112, ¶ 6. *Williamson v. Citrix Online*, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*). While the burden lies with Dell to rebut the presumption, it failed to articulate any basis in its Invalidity Contentions as allegedly rebutting the presumption against applying §112, ¶ 6.

*Second*, Dell also overlooks claim terms that connote structure to a POSITA. Here, the claim language at issue is not purely functional but rather recites specific structure ("control unit")

that can perform respective tasks set forth in the body the claims. The specification comports with the claims describing a "control unit CONTR" as "*a computer* with peripheral components and a software platform sitting on this computer … [with a] *hardware and software platform"* where the "control unit CONTR performs the functions PHTE1 to PHTE3, SW and PHN described below." '020 patent at 3:15-22. In addition to the claims and specification, the term "control unit" has been found to recite specific structure in a case very similar to the issue here. *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, 2:18-CV-546-JRG, 2020 WL 2098197, at *15 (E.D. Tex. May 1, 2020). In *Canon*, the court found the term "control unit" to have sufficient structure based on (i) "extrinsic dictionary definition strongly supports a finding that a 'control unit' connotes definite structure to one of skill in the art"; (ii) "specific description of the operation of the control unit with the claim further avoids a finding of a means-plus-function limitation"; and "the 'control' modifier imparts structural significance to the term [unit]." *See id* (citing Microsoft Corporation, Microsoft Computer Dictionary (5th ed. 2002), at 128 (defining "control unit" as "*A device or circuit* that performs an arbitrating or regulating function.")). Here, the *Canon* court reasoning applies with equal force here. The dictionary definition relied on in *Canon* is from 2002, around the time of the priority date here. Just as in *Canon*, the claim recites both the structural component ("control unit") and the specific operation of the control unit ("removes protocol data … and "switches a remaining data stream …"). Finally, because the term is the same at issue in *Canon*, "the 'control' modifier imparts structural significance to the term [unit]." *See id.*

C.  **"bus system"**

| WSOU's Proposed Construction | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | "a network that does not include any active components such as switching nodes, gateways, routers, or bridges, wherein all nodes are connected to a single wire" |

Dell's construction suffers from multiple flaws.

***First***, the plain and ordinary meaning of this term should stand because neither of the recognized *Thorner* exceptions—lexicography or disclaimer—apply. 669 F.3d at 1365. Both the words "bus" and "system" and the term "bus system" would readily be understood by a POSITA.

***Second***, the specification contradicts Dell's construction. The specification describes "[p]referably the communication network KN is a bus system." '020 patent at 2:29. To avoid the possibility of "bus system" being unnecessarily restricted (as Dell now attempts), the specification then goes onto expressly clarify that it is "possible" that the "communication network KN [which is previously disclosed as preferably a bus system] comprises active components, such as switching nodes, gateways, routers, [sic] bridges." *Id.* at 2:29-32. Paradoxically, Dell now carves out the very clarification that was made by the patentee. The genesis for Dell's carve-out (i.e., "does not include any active components such as switching nodes, gateways, routers, or bridges") seems to be a gross misreading of this portion of the specification. But Dell has it exactly opposite—the specification describes that the communication network KN (which the "bus system" is a preferred embodiment) ***can include*** "active components such as switching nodes, gateways, routers, [or] bridges." *Id.* at 2:29-32.

***Third***, Dell arbitrarily interjects the notion of "wherein all nodes are connected to a single wire." There is no suggestion in the claims in the specification that "nodes [be] connected to a single wire." Indeed, the word "wire" and "single wire" are not recited in the specification. It is

7

also unclear what Dell means by "connected to a single wire." For instance, if a wire is cut into multiple segments, but then reconnected, would Dell consider the wire "single"? And what does Dell consider a "wire"? For multi-conductor wiring (such as twisted-pair wiring), does Dell maintain that the wiring is "single"? Ultimately, Dell's construction appears to be driven from a desire to avoid infringement and would only confuse the jury. Both notions have no place in a principled construction.

### III. U.S. Patent No. 8,913,489 (Case No. 6:20-cv-00477) Claim Terms

#### 3. "the first set of port interfaces of the multi-chassis link aggregate" (Claims 1, 8, 15)

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite[2] |

This term should be given its plain and ordinary meaning. In each of Claims 1, 8, and 15, the claim language itself provides the full context and antecedent basis for this term. In Claim 1, the preamble recites "An aggregation switch in a multi-chassis system, comprising…", and the first limitation recites "a first set of member port interfaces of the aggregation switch grouped with one or more member port interfaces of a remote aggregation switch configured to form a multi-chassis link aggregate…" '489 patent, 22:33-38 (emphasis added). Thus, this term refers to the first set of member port interfaces of the aggregation switch which are configured to form a multi-

---

[2] Defendants filed a petition for *inter partes review* involving the '489 patent in IPR2021-00272, and in Defendants' petition, they argue that all claims of the '489 patent are either anticipated or rendered obvious, and Defendants purport to map alleged prior art references against each of the elements of all claims of the '489 patent. *See e.g.* IPR2021-00272, Petition (Paper 2), at 7. Furthermore, Defendants in the same petition argue that "no formal claim constructions [are] necessary." *Id.* at 17. Defendants' petition found all claim terms of the '489 patent to be sufficiently definite to map alleged prior art references onto the claim language. For example, Defendants' petition argues that certain reference(s) disclose "the first set of port interfaces of the multi-chassis link aggregate." *See e.g.*, *Id.* at 27. Thus in at least IPR2021-00272, Defendants have demonstrated that this term is not indefinite. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("As a preliminary matter, we observe that a claim cannot be both indefinite and anticipated.").

chassis link aggregate with a remote aggregation switch, as opposed to "a second set of port interfaces" in the second element (*see Id.*, 22:41-42).

This is the same result for this term in Claims 8 and 15. Claim 8 recites in its first element "a first set of port interfaces in the switch, wherein the first set of ports are configured to form a multi-chassis link aggregate…" *Id.*, 23:27-31 (emphasis added). Claim 15 recites "a first set of port interfaces in the switch wherein the first set of ports are configured to form a multi-chassis link aggregate…" *Id.*, 24:20-24 (emphasis added). Each of Claims 1, 8, and 15 provides the context and antecedent basis for this term, and no construction is necessary.

Dated: February 17, 2021          Respectfully submitted,

By:    */s/ Ryan Loveless*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Brian M. Koide
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com
Brian@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

    A true and correct copy of the foregoing instrument was served or delivered electronically via the U.S. District Court [LIVE]- Document Filing System to all counsel of record on February 17, 2021.

*/s/ James L. Etheridge*
James L. Etheridge

10