**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, <br><br> Defendants. | Case No. 6:20-cv-00477-ADA <br> Case No. 6:20-cv-00482-ADA <br><br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF
REGARDING PATENT NOS. 7,424,020 & 8,913,489**

# TABLE OF CONTENTS

Page

I. DISPUTED TERMS FROM THE '020 PATENT ............................................................ 1

    A.    "removing, at the network node, the protocol data of a portion of protocol layers from the received data stream" (claim 1) / "removes protocol data from a portion of protocol layers from a data stream" (claim 6) ........................... 2

    B.    "a control unit which removes protocol data from a portion of protocol layers from a data stream received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and switches a remaining data stream to be transmitted to one of the terminals via the first interface" (claim 6) ............................................ 5

        1.    The term is indefinite under *IPXL* ............................................................ 6

        2.    Alternatively, the term is subject to 35 U.S.C. § 112, ¶ 6 ........................ 7

    C.    "bus system" (claims 1 and 6) ................................................................ 9

II. DISPUTED TERM FROM THE '489 PATENT ........................................................... 11

    A.    "the first set of port interfaces of the multi-chassis link aggregate" (claims 1, 8, 15) ................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*,
   813 F. App'x 522 (Fed. Cir. May 14, 2020) ....................................................13, 14

*Canon, Inc. v. TCL Elecs. Holdings, Ltd.*,
   2:18-CV-546-JRG, 2020 WL 2098197 (E.D. Tex. May 1, 2020) ...........................9

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   No. 6-19-CV-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ........8, 10

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
   803 F.3d 620 (Fed. Cir. 2015) ................................................................................2

*Dyfan, LLC v. Target Corp.*,
   No. W-19-CV-00179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 24, 2020) .........9

*Enzo Biochem, Inc. v. Applera Corp.*,
   599 F.3d 1325 (Fed. Cir. 2010) ...........................................................................14

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
   99 F.3d 1098 (Fed. Cir. 1996) ...............................................................................7

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) .........................................................................6, 7

*Kimberly-Clark Corp. v. Tyco Int'l, Inc.*,
   No. 98-C-0756-C, 1999 WL 33944112 (W.D. Wis. Nov. 1, 1999) ........................2

*Kinik Co. v. Int'l Trade Comm'n*,
   362 F.3d 1359 (Fed. Cir. 2004) ...........................................................................10

*Light Transformation Techs. LLC v. Lighting Sci. Grp. Corp.*,
   No. 2:12-CV-826, 2014 WL 3402125 (E.D. Tex. July 11, 2014) ...........................5

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) .............................................................................11

*MTD Prod. Inc. v. Iancu*,
   933 F.3d 1336 (Fed. Cir. 2019) .............................................................................9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ...............................................................................................2

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Optis Wireless Tech., LLC v. Huawei Device Co.*,
    No. 2:17-CV-123, 2018 WL 476054 (E.D. Tex. Jan. 18, 2018) .............................................8

*Poly-Am., L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016) ...........................................................................................5

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    No. 16-CV-06371-BLF, 2018 WL 5603631 (N.D. Cal. Oct. 26, 2018) ...................................8

*Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*,
    2021 WL 786361 (Fed. Cir. Mar. 2, 2021) ...........................................................................8

*SandBox Logistics LLC v. Proppant Express Invs. LLC*,
    813 F. App'x 548 (Fed. Cir. 2020) ....................................................................................11

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013) ...........................................................................................4

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) .......................................................................................3, 5

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ...........................................................................................4

*Transcend Med., Inc. v. Glaukos Corp.*,
    No. CV 13-830, 2015 WL 5546988 (D. Del. Sept. 18, 2015) .................................................5

*In re Walter*,
    698 F. App'x 1022 (Fed. Cir. 2017) .....................................................................................5

*Well-man, Inc. v. Eastman Chem. Co.*,
    642 F.3d 1355 (Fed. Cir. 2011) .........................................................................................14

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ...........................................................................................8

**Statutes**

35 U.S.C. § 311(b) ...........................................................................................................14

**Other Authorities**

MPEP § 2181 ...................................................................................................................8

## TABLE OF EXHIBITS[1]

| Exhibit | Description |
|---------|-------------|
| 1 | '020 patent File History, 10/3/06 Non-Final Rejection |
| 2 | '020 patent File History, 4/3/07 Final Rejection |
| 3 | '020 patent File History, 6/25/07 Applicant Argument |
| 4 | '020 patent File History, 10/3/02 Claims |
| 5 | '020 patent File History, 1/03/07 Applicant Argument |
| 6 | MPEP § 2181 |
| 7 | Disclosures of Extrinsic Evidence |
| 8 | '020 patent File History, 10/5/07 Non-Final Rejection |
| 9 | '020 patent File History, 2/4/08 Applicant Argument |
| 10 | Concise Telecom Networking Dictionary |
| 11 | Federal Standard 1037C: Telecommunications: Glossary of Telecommunications Terms (1996) |
| 12 | ATIS Glossary |

---

[1] Exhibits are attached to the Declaration of Brian A. Rosenthal in Support of Defendants' Responsive Claim Construction Brief Regarding Patent Nos. 7,424,020 & 8,913,489.

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Document(s) |
|---|---|
| '020 patent | U.S. Patent No. 7,424,020 |
| '489 patent | U.S. Patent No. 8,913,489 |
| Br. | Opening Claim Construction Brief (Case No. 6:20-cv-00477-ADA, Dkt. 80; Case No. 6:20-cv-00482-ADA, Dkt. 76) |
| Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation |
| IPR | *Inter partes* review petition |
| LAG | Link aggregation group |
| m-p-f | Means-plus-function |
| MC-LAG | Multi-chassis link aggregation group |
| MPEP | Manual of Patent Examining Procedure |
| Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |
| POSA | Person of ordinary skill in the art |
| PTAB | Patent Trial and Appeal Board |

***Emphasis added unless indicated otherwise.***

Both the '020 and '489 patents are indefinite due to hopelessly ambiguous claim language. The '020 patent recites removing protocol layer information, but then has wildly inconsistent statements about how much—and what portions—must be removed.  WSOU's attempt to resuscitate the claims only highlights the indefiniteness, as its reading is directly contradicted by the plain language and the prosecution history.  The patent also improperly—and intentionally— recites apparatus claims that actually perform functions, which violates long-standing precedent. The one disputed term that is definite—bus system—is explicitly limited in the specification.

The '489 patent fares no better, as each claim recites a term that has multiple possible meanings, yet there is no way to determine which applies.  The claims are thus indefinite.

## I.   DISPUTED TERMS FROM THE '020 PATENT

The '020 patent has a terse disclosure of a network node that sits between a communication network and multiple terminals.  '020 patent, 1:33–43.  Figure 1 depicts a communication system with communication network KN, network nodes FSW 1/2, and terminals TE1–6.  *Id*., 2:14–19.



Fig.1

Communication network KN is preferably "a bus system" (*id*., 2:28–29), but alternatively could instead have "active components such as switching nodes, gateways, routers, bridges."  *Id*., 2:30– 33.  The patent states there must be at least two terminals connected to each network node but each

network node has only one IP address.  '020 patent, 5:1–3.

The data received by the node and destined for a terminal can consist of "useful data and protocol data."  *Id.*, 2:57–59.  The network node removes protocol data and sends useful data to the terminals.  *Id.*, Abstract; 1:33–43.  The patent explains that removing protocol information at layers[2] one and three has "[s]pecial advantages," and that there is little benefit to removing any protocol information above layer four.  *Id.*, 3:35–42.

A. **"removing, at the network node, the protocol data of a portion of protocol layers from the received data stream" (claim 1) / "removes protocol data from a portion of protocol layers from a data stream" (claim 6)**

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| Indefinite | Plain and ordinary meaning |

The intrinsic record is wildly inconsistent in its description of what "portion of protocol data" must be removed to meet the claims.  While the broadest plain meaning would suggest that removal of ***any*** protocol information from multiple layers will do, the specification and file history state otherwise, and leave the term completely undefinable.  Because the intrinsic record "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of" these terms, they are indefinite.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

The claim language itself does not fully inform a POSA about the meaning of "a portion."  Instead, the plain meaning would suggest only that "a portion" is anything than less than the whole. *Kimberly-Clark Corp. v. Tyco Int'l, Inc.*, No. 98-C-0756-C, 1999 WL 33944112, at *13 (W.D. Wis. Nov. 1, 1999) ("The ordinary and accustomed meaning of 'portion' is some part tha[n] the whole.").  However, among the many potential remaining possibilities, it is still not clear what protocol data must be removed.  *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 630 (Fed. Cir. 2015) ("[T]he patent and prosecution history must disclose a single known approach

---

[2]  The layers refer to the seven-layer Open System Interconnection (OSI) model.  *Id.*, 3:64–67.

or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select."). For example, the claim language does not specify whether it is sufficient to remove **some** protocol data from at least one protocol layer or whether **all** protocol data must be removed from at least one protocol layer. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344–45 (Fed. Cir. 2015) (claim indefinite where weight could be measured three different ways and intrinsic record did not provide guidance as to which measure to use). The rest of the intrinsic record serves only to heighten the ambiguity.

The short specification does not use the word "portion," which only appears in the claims, and instead uses the word "majority" to discuss removing protocol data. '020 patent, 2:60–64 ("The network nodes FS1 and FS2 now **remove the majority of the protocol data**."); Abstract; 1:39–43; 1:46–49; 3:24–28. The specification does not explain how "majority" maps onto "portion," and there is no guidance as to what "majority" means.[3] The specification also discloses removing protocol data from "one or more communication layers," *id.*, 3:29–34, and suggests "removal of the protocol data of the first (simple point-to-point protocol) and/or the third layer (e.g., saving IP addresses)" and processing layers 1 to 4, but not layers 5 or higher. *Id.,* 3:35–42; 3:60–64 (discussing "layers 1, 2, 3, and 4" but also suggesting to "process protocols of more or fewer layers"). In short, the specification provides no further clarity.

Finally, the prosecution history provides grossly inconsistent guidance as to what "portion" means. After the examiner rejected the claims because "majority" was indefinite, applicant amended the claims to recite a "portion": "removing, at the network node, a majority of the

---

[3] The examiner noted that "majority" is indefinite because it is not clear if it refers to removing more than half of the total bytes of data, more than half of the bytes of data in each layer, a certain percentage of bytes from each layer, or something else. Exs. 1 (10/3/06 Non-Final Rejection) at 2–3; 2 (4/3/07 Final Rejection) at 2–3.

protocol data <u>of a portion of protocol layers</u> from the received data stream." Ex. 3 (6/25/07 Response) at 2.[4] But then applicant made inconsistent arguments about the meaning of "portion." First, applicant defined "portion" to mean ***the data from protocol layers 1-4***.

> Thus, regarding the removal of "a portion" of the protocol data, refers to the removal of the data from protocol layers 1-4 of the OSI model, and further the "portion" removed refers to the portion of the protocol layers, ***i.e., layers 1-4***, out of the seven layers of the OSI model.

*Id.*, 6; *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1202 (Fed. Cir. 2013) ("i.e." is "an intent to define the word to which it refers"). In the same response, applicant backtracked from its definitional "i.e." statement and referred to removing layers 1–4 as only an "example":

> On the contrary, as pointed out above, protocol data related to layers 1-4 of the OSI model, ***for example***, are simply removed from the data stream.

*id.*, 7; *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1371 (Fed. Cir. 2012) ("i.e." not definitional when applicant was "explaining [an] example"). Further inconsistency and confusion ensued. After the first amendment/argument, the examiner again rejected the claims, this time based on a prior art reference (Huitema) that removed one layer of protocol data. Ex. 2 (4/3/07 Final Rejection) at 4. In response, applicant argued:

> Huitema does not disclose the protocol data of a portion of protocol <u>layers</u>. On the contrary, ***Huitema simply removes data from a single protocol layer***, i.e., IPv4. Thus, since Huitema contemplates removing data from only one protocol layer, Applicant submits Huitema fails to teach or suggest removing protocol data of a portion of protocol <u>layers</u>.

Ex. 3 (6/25/07 Applicant Argument) at 8 (underlining in original; bold/italics added). Thus, based on this disavowal, the term "portion" ***cannot*** mean only a single layer.

Applicant's vacillating description of "portion" removes any possible meaning from these

---

[4] Earlier in prosecution, applicant asserted "majority" meant "one or more." Ex. 5 (1/3/07 Applicant Arguments) at 5 ("[R]emoving a majority of the protocol data is fully described . . . the specification explains . . . that the protocol data of one or more layers is processed and removed.").

terms.  The intrinsic record, as discussed, at various times suggests that "portion" could mean: one or more layers; more than one layer; *i.e.,* not just one; layers 1–4; any number of layers, but not all; and some part of some layers, without removing any single layer.  These inconsistencies leave the term hopelessly vague, and the claims are thus indefinite.  *In re Walter*, 698 F. App'x 1022, 1026 (Fed. Cir. 2017) (indefinite because "term's ill-defined boundaries coupled with the patentee's erratic use of the term [in prosecution] fails to inform [POSAs] about the scope").

WSOU's argument that "a POSITA would understand that the data need only be removed in at least one protocol layer" ***cannot*** be correct.  Br. 3.  As explained, applicant expressly distinguished the claims from the prior art because the prior art only removed one layer.  This was a clear disavowal of claim scope.  *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) (disavowal in file history notwithstanding claim language that implied broader scope).  Moreover, given that the intrinsic record contradicts WSOU's alleged plain meaning of removing only one layer, and provides numerous other inconsistent interpretations, a POSA could not be reasonably certain as to what these terms mean.  *Teva*, 789 F.3d at 1345 (indefinite when patentee ascribed different meanings to term at different times); *Transcend Med., Inc. v. Glaukos Corp.*, No. CV 13-830, 2015 WL 5546988, at *7 (D. Del. Sept. 18, 2015) (indefinite due to inconsistent descriptions in specification and file history); *Light Transformation Techs. LLC v. Lighting Sci. Grp. Corp.*, No. 2:12-CV-826, 2014 WL 3402125, at *9 (E.D. Tex. July 11, 2014) (indefinite when intrinsic record didn't indicate which of multiple possible axes was referred to).

**B.  "a control unit which removes protocol data from a portion of protocol layers from a data stream received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and switches a remaining data stream to be transmitted to one of the terminals via the first interface" (claim 6)**

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| Indefinite.  In the alternative:  this term is subject to 35 U.S.C. § 112, ¶ 6. | Plain and ordinary meaning |

| | |
|---|---|
| **Function**:  [1] removes protocol data from a portion of protocol layers from a data stream[5] received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and [2] switches a remaining data stream to be transmitted to one of the terminals via the first interface<br>**Structure**:  control unit CONTR executing function PHN, containing processes P1 to P3 and function SW; and equivalent structures | |

### 1.  The term is indefinite under *IPXL*

Because claim 6 recites a method step within an apparatus claim, it is indefinite under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005).[6]  Claim 6 recites an apparatus that must perform actual steps.  Specifically, the claim recites a "control unit **which removes . . . and switches**."  This is not sloppy drafting; these claims were intentionally written this way, as shown in the prosecution history:

| Original Claim (10/3/02) | Claim Amendment (01/3/07) | Claim Amendment (6/25/07) |
|---|---|---|
| wherein the network node has a ***control unit which is designed so that it removes*** the majority of the protocol data from a data stream received on the network side via the second interface, which data stream consists of useful data and protocol data and is directed towards one of the terminals connected with the first interface, ***and switches*** the remaining data stream in the direction of this terminal | ~~wherein the network node~~ has a ***control unit which is <u>configured to remove</u>*** ~~designed so that it removes the~~ <u>a</u> majority of ~~the~~ protocol data from a data stream received ~~on the network side~~ <u>from the communication network</u> via the second interface, ~~which~~ <u>the</u> data stream ~~consists of~~ <u>comprising</u> useful data and protocol data, and ~~is directed towards one of the terminals connected with the first interface, and switches~~ ***to switch*** the remaining data stream ~~in the direction of this terminal~~ <u>to be transmitted to a terminal of the terminals via the first interface</u>. | ***a control unit which*** ~~is configured to remove~~ ***<u>removes</u>*** ~~a majority of~~ protocol data <u>from a portion of protocol layers</u> from a data stream received from the communication network via the second interface, the data stream comprising useful data and <u>the</u> protocol data, and ~~to switches the~~ ***switches*** a remaining data stream to be transmitted to a ~~terminal~~ <u>one</u> of the terminals via the first interface, |

---

[5]  This term includes "removes protocol data from a portion of protocol layers from a data stream," which is itself indefinite, as stated above.  This section addresses the "control unit" phrase separately, even if "removes protocol data from a portion" phrase is not held indefinite.

[6]  WSOU argues that Defendants have not preserved indefiniteness because Defendants "listed this term as indefinite in its Invalidity Contentions and did not provide any notice of its indefiniteness theory."  Br. 4–5.  The Court's order governing proceedings, however, requires only "an *identification* of any limitations the Defendant contends are indefinite."  OGP v. 3.2 at 2.

Exs. 4 at 1–2 (issued claim 6 was originally claim 5), 5 at 3–4, 3 at 3 (amendments in underline). The first two versions of the claims appropriately recited a control unit with the *capability* to perform steps by using the phrases "which is designed" and "which is configured."  However, applicant's June 2007 claim amendment is contrary to *IPXL*.  Applicant's amendment from "which is configured to remove" to "which removes," changed the claim from mere capability to reciting actual performance, and makes it unclear when infringement occurs.  *IPXL*, 430 F.3d at 1384.

WSOU's arguments against *IPXL* ignore both the prosecution history and plain language of the claim.  First, WSOU's brief is silent as to the prosecution history and applicant's claim amendment reciting actual performance.  Br. 4–5.  Second, WSOU attempts to avoid the plain language of the claim by improperly rewriting it.  According to WSOU, the claim recites a structure "which is capable of performing recited functions."  *Id.*, 5.  However, "which is capable" or analogous phrasing does not appear in the claim—indeed, applicant explicitly amended the claim to **remove** such language and replace it with the active verb "removes."  *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1106 (Fed. Cir. 1996) ("attorney argument cannot control in light of the language of the claim").  Nor does WSOU explain how "which removes" indicates mere capability.  Finally, WSOU erroneously argues that the lack of "user" in the claims means *IPXL* does not apply.  Br. 5.  But "the law is clear that user-action is not the only cause of indefiniteness under *IPXL*."  *Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-CV-06371-BLF, 2018 WL 5603631, at \*17 (N.D. Cal. Oct. 26, 2018).

### 2.   Alternatively, the term is subject to 35 U.S.C. § 112, ¶ 6

If the Court determines that this term is not indefinite, then it is subject to § 112, ¶ 6.  A term lacking the word "means" invokes § 112, ¶ 6 if "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure."  *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 2021 WL 786361, at \*2 (Fed. Cir. Mar. 2, 2021).  Here, the claim

language relies on the nonce word "control unit" without providing structure in the claim. MPEP

section 2181(I)(A), recognizes "unit" as a non-structural generic placeholder. Ex. 6 (MPEP) at 2.

Adding a generic prefix such as "control" to "unit" does not change the language of the claim into

having "sufficiently definite structure." *Optis Wireless Tech., LLC v. Huawei Device Co.*, No.

2:17-CV-123, 2018 WL 476054, at *32 (E.D. Tex. Jan. 18, 2018) ("unit" a nonce word even with

prefix "processing"); *cf. Rain Computing*, 2021 WL 786361, at *2 (prefix "user identification"

didn't impart structure to "module"); *Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-

ADA, 2020 WL 376664, at *4–5 (W.D. Tex. Jan. 23, 2020) (prefix "first communication" didn't

impart structure to "module"); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir.

2015) (prefix "distributed learning control" didn't impart structure to module).

Contrary to WSOU's argument, the claim does not provide sufficient structure for "control

unit." First, WSOU states that "claim language at issue is not purely functional but rather recites

specific structure ('control unit') *that can perform respective tasks* set forth in the body [of] the

claims." Br. 5–6. WSOU's argument confirms Defendants' position—the claim describes

"control unit" solely based on its functionality.

Second, WSOU argues the *specification* imparts sufficient structure onto "control unit."

Step one of the m-p-f inquiry looks at "whether the *claim limitation* connotes 'sufficiently definite

structure'" and if so, then the second step "review[s] the specification to identify the structure that

performs the claimed function(s)." *MTD Prod. Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019).

The Federal Circuit criticized the PTAB for "conflat[ing] these distinct inquiries." *Id*. Holding

otherwise would "leave § 112, ¶ 6 without any application: any [m-p-f] limitation that met the

statutory requirements, *i.e.*, which includes having corresponding structure in the specification,

would end up not being a [m-p-f] limitation at all." *Id*. Thus, WSOU's reliance on the

**specification** to impart structure on the **claim** at step one of the inquiry is misplaced.  *Dyfan, LLC v. Target Corp.*, No. W-19-CV-00179-ADA, 2020 WL 8617821, at *6 (W.D. Tex. Nov. 24, 2020).

Finally, WSOU cites one inapposite case to argue "control unit" recites specific structure. Br. 6.  In *Canon, Inc. v. TCL Elecs. Holdings, Ltd.*, 2:18-CV-546-JRG, 2020 WL 2098197, at *16 (E.D. Tex. May 1, 2020), the court determined "control unit" imparted sufficient structure because the prosecution history indicated applicant "made, clear affirmative choices to avoid using means-plus-function language" through amendments to the claim language.  Here, there are no similar amendments avoiding § 112, ¶ 6.  Moreover, as this Court explained, that reasoning is flawed because relying on applicant's intentions during prosecution would allow an applicant to draft claims with functional language while "completely bypass[ing] all of the restrictions placed" on [m-p-f] claims.  *Dyfan*, 2020 WL 8617821, at *4 n.3.[7]

Defendants' identified function is taken from the claim language.  WSOU does not state what, if any, function and structure exists if the term is subject to § 112, ¶ 6.  Br. 5–6.  The only structure that performs the recited function is the control unit CONTR (a general purpose computer) executing function PHN, containing processes P1 to P3 and function SW.  '020 patent, 3:15–4:25; Fig. 2.  Thus, if it is not indefinite, it should be construed under § 112, ¶ 6.

### C.  "bus system" (claims 1 and 6)

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| "a network that does not include any active components such as switching nodes, gateways, routers, or bridges, wherein all nodes are connected to a single wire" | Plain and ordinary meaning |

The parties dispute whether "bus system" should be subject to the express distinctions

---

[7]  The *Canon* court also relied on undisputed extrinsic evidence.  *Canon*, 2020 WL 2098197, at *15.  Here, neither party disclosed extrinsic evidence for the term.  Ex. 7 (Extrinsic Evidence Disclosures) at 2, 10.  WSOU's reliance on a dictionary, which it did not disclose, produce, or attach as an exhibit, is improper and should be stricken.  No. 6:20-cv-00482, Dkt. 34 (OGP) at 7.

provided in the specification and confirmed by the file history.  It should.  *Kinik Co. v. Int'l Trade Comm'n*, 362 F.3d 1359, 1365 (Fed. Cir. 2004) ("[C]laims have the meaning and scope with which they are used in the specification and the prosecution history.").  The specification states:

> The communication network KN is a communication network by means of which data can be exchanged between the components connected to the communication network.  ***Preferably the communication network KN is a bus system.  It is <u>however</u> also possible that the communication network KN comprises active components such as switching nodes, gateways, routers, bridges.***  It is also possible here that the communication network KN consists of several different part networks which use different communication protocols for data exchange or are allocated to different network operators.

'020 patent, 2:26–35.  Thus, in describing different networks, the specification distinguishes a "bus system" from a network that has "active components such as switching nodes, gateways, routers [and] bridges."  *Id.*  When the specification makes such a distinction, it is appropriate to construe the claims accordingly.[8]  *Digital Retail Apps*, 2020 WL 376664, at *9 ("wirelessly transmitting" "does not include photographing or scanning" because they are distinct in specification).

The examiner confirmed this definition during prosecution, stating that "by reciting a bus system, the invention *is defined within the context of a simple bus network not involving any switching or routing*."  Ex. 8 (10/5/07 Non-Final Rejection) at 3.  By not challenging that statement, Ex. 9 (2/4/08 Applicant Argument), applicant's conduct during prosecution also confirmed the specification's definition of "bus system."  *SandBox Logistics LLC v. Proppant Express Invs. LLC*, 813 F. App'x 548, 554 (Fed. Cir. 2020) (acquiescence or failure to challenge examiner's understanding amounted to disclaimer).  Defendants' construction uses the specification's definition of a "bus system" and explains that a bus system requires that all nodes

---

[8]  Even WSOU admits "bus system" is but one type of "communication network."  Br. 7.

connect to a single wire.[9]  Exs. 10–12.

WSOU avoids the definition of bus system in the intrinsic record by advocating "plain and ordinary meaning."  Br. 7.  But a bus system is distinct from networks with active components. *See supra*.  While other "communication networks" are described in the specification, these other communication networks (those with "active components") are not ***claimed***; claims 1 and 6 explicitly state "***the communication network is a bus system***."  By not claiming other disclosed networks, applicant dedicated them to the public.  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed. Cir. 1996).  Thus, WSOU's argument about what a ***communication network*** can include is inapposite to the construction of "bus system."

## II.   DISPUTED TERM FROM THE '489 PATENT

The '489 patent relates to a LAG, which is a group of physical links between network devices that provides redundancy.  '489 patent, Abstract, 4:45.  According to the patent, when a LAG is split across two switches it is called a "***multi-chassis*** link aggregation group (MC-LAG)." *Id*., 4:54–57.  Figure 1 (annotated below) depicts both a LAG **118** from a single device and MC-LAGs **102a**, **102b** and **102c** from multiple devices.



Fig. 1

---

[9]  WSOU takes issue with "single wire," even though the evidence confirms a bus uses a single wire.  Exs. 10–12.  Regardless, Defendants do not object to replacing "wire" with "interface."

In an MC-LAG, the traffic can be load-balanced across the two devices, and redundancy is provided if one device fails.  *Id*., 4:54–63.  The claims are directed to what happens when one device in the MC-LAG (or the link between them) fails.

**A.   "the first set of port interfaces of the multi-chassis link aggregate" (claims 1, 8, 15)**

| Defendants' Proposal | WSOU's Proposal |
|---|---|
| Indefinite | Plain and ordinary meaning |

The term "the first set of port interfaces of the multi-chassis link aggregate" is incurably indefinite because it is unclear which, if any, of the previously mentioned sets of port interfaces in the claim the disputed phrase refers to.  Claim 1, for example, recites:

> An aggregation switch in a multi-chassis system, comprising:
>
> *a first set of member port interfaces of the aggregation switch* grouped with *one or more member port interfaces of a remote aggregation switch* configured to form a multi-chassis link aggregate . . .
>
> a processing module operable to: . . .
>
> reconfigure one or more of *the first set of port interfaces of the multi-chassis link aggregate* to form a link aggregate[10]

In other words, the claim recites one set of port interfaces "of the aggregation switch" (green) and another set of port interfaces "of a remote aggregation switch" (blue).  The term at issue, however, refers to a set of port interfaces "*of the multi-chassis link aggregate*" (red).  Because there is no prior element referring to a "first set of port interfaces of the multi-chassis link aggregate," it is unclear to what set of port interfaces refers.  It could, for example, refer to a) the set of port interfaces of the aggregation switch, b) the set of port interfaces of the remote aggregation switch, or c) the combination of both sets—which would seem to be the most natural reading since the claims recite that those sets are "grouped . . . to form a multi-chassis link aggregate."  WSOU insists that the term refers to the set in the claimed switch (green), even though that set is not

---

[10]  Independent claims 8 and 15 recite similar language, and the analysis herein applies equally.

recited to be "of the ***multi-chassis*** link aggregate," and instead is recited to be "of the aggregation switch." Br. 8–9.  This lack of clarity renders the term indefinite.

The Federal Circuit recently affirmed indefiniteness of a similar term in *Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*, 813 F. App'x 522, 526 (Fed. Cir. May 14, 2020).  There, the claim recited three sets of IP addresses.  Later in the claim, the patent used the term "said ***different*** IP address," which lacked an antecedent basis.  The Federal Circuit explained that, "[w]ith three different IP addresses to choose from, a POSA faced with the 'said different IP Address' limitation is left to wonder which of the different IP addresses is 'said' different one." *See id*.  The exact same thing is true here.  There are at least three different possible sets of "port interfaces" to which the term "the first set of port interfaces ***of the multi-chassis link aggregate***" could refer.  "A [POSA], faced with the claims and the specification, could not, with reasonable certainty, discern the meaning of the claim term."  *Id.*

Looking at the whole claim only compounds the ambiguity.  The claims all focus on the operation of a ***single switch***.  E.g., claim 1 is directed to "[a]n aggregation ***switch*** in a multi-chassis system," while claims 8 and 15 are each directed to a "method in a switch."  The term at issue, however, refers to a "set of port interfaces of the ***multi-chassis*** link aggregate," which, by definition, requires ***multiple*** physical switches (*i.e.,* more than one chassis).  This mismatch between the claims focusing on a single switch and the term requiring multiple switches, renders this term further indefinite because it is unclear when, if ever, an accused switch could possibly meet this limitation—*e.g.,* when sold as a single switch or when combined with another switch.[11]

---

[11] Contrary to WSOU's argument (Br. 8 n.2), there is nothing inconsistent with Defendants' IPR because indefiniteness challenges cannot be raised in IPRs.  35 U.S.C. § 311(b).  Given the similarities between the IPR prior art and the '489 patent disclosure, no formal claim construction was necessary to resolve the IPR.  *Well-man, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361

---

(Fed. Cir. 2011) ("[C]laim terms need only be construed to the extent necessary to resolve the controversy."). *Enzo Biochem, Inc. v. Applera Corp.* is consistent with this approach.  599 F.3d 1325, 1332 (Fed. Cir. 2010).  There, the accused infringer argued that the claims were indefinite, or, alternatively, anticipated.  The same holds true here.

Dated:  March 17, 2021

By:  */s/ Barry K. Shelton*

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone:  512.263.2165
Facsimile:  512.263.2166

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
Kyanna Sabanoglu
ksabanoglu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 17, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
