**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION,<br><br>    Defendants. | Case No. 6:20-cv-00477-ADA<br>Case No. 6:20-cv-00482-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF
REGARDING PATENT NOS. 7,424,020 & 8,913,489**

**TABLE OF CONTENTS**

Page

I. DISPUTED TERMS FROM THE '020 PATENT ................................................................. 1

    A. "removing, at the network node, the protocol data of a portion of protocol layers from the received data stream" (claim 1) / "removes protocol data from a portion of protocol layers from a data stream" (claim 6) ............................ 1

    B. "a control unit which removes protocol data from a portion of protocol layers from a data stream received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and switches a remaining data stream to be transmitted to one of the terminals via the first interface" (claim 6) ............................................. 2

        1. The term is indefinite under *IPXL* ................................................................. 2

        2. Alternatively, the term is subject to 35 U.S.C. § 112, ¶ 6 .......................... 3

    C. "bus system" (claims 1 and 6) ................................................................................ 3

II. DISPUTED TERM FROM THE '489 PATENT ................................................................ 4

    A. "the first set of port interfaces of the multi-chassis link aggregate" (claims 1, 8, 15) ........................................................................................................................ 4

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2003)..................................................................................................4

*Baldwin v. New York*,
   2015 WL 6696505 (W.D.N.Y. Nov. 2, 2015) ..............................................................................4

*Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*,
   813 F. App'x 522 (Fed. Cir. May 14, 2020) ................................................................................4

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
   35 F. Supp. 3d 1176 (C.D. Cal. 2014) ........................................................................................1

*Canon, Inc. v. TCL Elecs. Holdings Ltd.*,
   2020 WL 2098197 (E.D. Tex. May 1, 2020)..............................................................................3

*InterDigital Commc'n, LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318 (Fed. Cir. 2012)...................................................................................................1

*K-2 Corp. v. Valomon S.A.*,
   191 F.3d 1356 (Fed. Cir. 1999)...................................................................................................5

*MasterMine Software, Inc. v. Microsoft Corp.*,
   874 F.3d 1307 (Fed. Cir. 2017)...................................................................................................2

*Mayes v. E.P.A.*,
   2008 WL 65178 (E.D. Tenn. Jan. 4, 2008).................................................................................4

*Merck & Co. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005)...................................................................................................5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)....................................................................................................................1

*Rembrandt Data Techs., LP v. AOL, LLC*,
   641 F.3d 1331 (Fed. Cir. 2011)...................................................................................................2

*Spherix Inc. v. Matal*,
   703 F. App'x 982 (Fed. Cir. 2017) ..............................................................................................5

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
   236 F.3d 684 (Fed. Cir. 2001).....................................................................................................1

*Well-man, Inc. v. Eastman Chem. Co.*,
   642 F.3d 1355 (Fed. Cir. 2011)...................................................................................................5

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Document(s) |
|---|---|
| '020 patent | U.S. Patent No. 7,424,020 |
| '489 patent | U.S. Patent No. 8,913,489 |
| DefBr. | Responsive Claim Construction Brief (Case No. 6:20-cv-00477-ADA, Dkt. 83; Case No. 6:20-cv-00482-ADA, Dkt. 79) |
| Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation |
| IPR | *Inter partes* review petition |
| LAG | Link aggregation group |
| m-p-f | Means-plus-function |
| MC-LAG | Multi-chassis link aggregation group |
| MPEP | Manual of Patent Examining Procedure |
| Plaintiff | WSOU Investments, LLC d/b/a Brazos Licensing and Development |
| PlBr. | Opening Claim Construction Brief (Case No. 6:20-cv-00477-ADA, Dkt. 80; Case No. 6:20-cv-00482-ADA, Dkt. 76) |
| POSA | Person of ordinary skill in the art |
| PTAB | Patent Trial and Appeal Board |
| ReplyBr. | Reply Claim Construction Brief (Case No. 6:20-cv-00477-ADA, Dkt. 84; Case No. 6:20-cv-00482-ADA, Dkt. 80) |

*Emphasis added unless indicated otherwise.*

## I.  DISPUTED TERMS FROM THE '020 PATENT

### A.  "removing, at the network node, the protocol data of a portion of protocol layers from the received data stream" (claim 1) / "removes protocol data from a portion of protocol layers from a data stream" (claim 6)

WSOU's reply fails to address the fatal flaw with its proposal: the plain and ordinary meaning of "portion" it propounds (PlBr. 3; ReplyBr. 1)—"data need only be removed in at least one protocol layer"—*was expressly disavowed by applicant*. DefBr. 4–5. Incredibly, despite Defendants' extensive discussion of the prosecution history that flatly precludes WSOU's proposed construction, WSOU does not even attempt to explain the prosecution history or address the inconsistent statements therein about the scope of the claims. WSOU also does not—and cannot—offer an alternative formulation of plain meaning that is consistent with that intrinsic record. The intrinsic record's inconsistent use of "portion" thus leaves this term indefinite.[1]

WSOU's argument that a claim does not need to "inform" a POSA about its scope is squarely incorrect. ReplyBr. 1. The law "*require[s]* that *a patent's claims . . . inform* [a POSA] about the scope." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). WSOU is also wrong in arguing that Defendants "confuse breadth with indefiniteness." ReplyBr. 1. Defendants' argument is not about breadth, but about the claim's lack of ascertainable *boundaries*. DefBr. 2–3; *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (definiteness inquiry focuses on whether a POSA would understand *scope* of the claim and finding "comparing" indefinite where it "could undoubtedly have other meanings").[2]

---

[1] WSOU cites *InterDigital Commc'n, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318 (Fed. Cir. 2012) to argue that modifiers are not added to terms. In *InterDigital*, the court declined to construe "code" alone because it was used with several different modifiers. *Id.* at 1325 n.1. Here, neither party seeks to add a modifier to "portion," and the patent does not apply such modifiers.

[2] *See also California Inst. of Tech. v. Hughes Commc'ns Inc.*, 35 F. Supp. 3d 1176, 1194 (C.D. Cal. 2014) ("[T]hat a term covers broad possibilities does not render it indefinite, *as long as a person of ordinary skill can identify the outer boundaries*.").

1

Finally, rather than address the substance of the irreconcilable prosecution arguments, WSOU argues that applicant was not "obligated" to define "portion." ReplyBr. 1. But Defendants never argued that applicant needed to define "portion." Defendants instead showed that applicant made numerous *inconsistent* statements about the scope of "portion," leaving the term hopelessly ambiguous. It is telling that WSOU does not even attempt to address Defendants' actual argument.

**B. "a control unit which removes protocol data from a portion of protocol layers from a data stream received from the communication network via the second interface, the data stream comprising useful data and the protocol data, and switches a remaining data stream to be transmitted to one of the terminals via the first interface" (claim 6)**

1. **The term is indefinite under *IPXL***

WSOU's reply *ignores* that applicant explicitly amended claims from requiring mere capability to instead requiring performance of steps by the apparatus. DefBr. 6–7. Instead, WSOU relies on *MasterMine Software, Inc. v. Microsoft Corp.*, to argue that "which removes" reflects mere capability. 874 F.3d 1307, 1316 (Fed. Cir. 2017). *MasterMine*, however, stands only for the proposition that an apparatus claim that recites capability is not *IPXL* indefinite. It analyzed the claim language at issue to determine whether it required capability or performance. *MasterMine*, 874 F.3d at 1313–16. Here, the claim language unambiguously recites actual performance ("which removes") within an apparatus claim. DefBr. 6–7. And—unlike in *MasterMine*—this reading is compelled by the prosecution history, in which the claims were amended to recite "which removes" instead of "which is configured to remove." *Id*. WSOU ignores these amendments.

Finally, WSOU creates a false dichotomy between a claim involving capability and a claim involving user action. Contrary to WSOU's argument, a claim can be invalid under *IPXL even if* it does not involve user action, so long as it recites a method step within an apparatus claim. *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011). The test is not whether the claim recites user action but whether it recites a method step—here, claim 6 does.

2

### 2. Alternatively, the term is subject to 35 U.S.C. § 112, ¶ 6

WSOU's reply ignores Defendants' arguments based on the specific language of claim 6 and the '020 patent. Instead, WSOU argues that "control unit" recites sufficient structure because Judge Gilstrap determined "control unit" recites sufficient structure in *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, 2020 WL 2098197, at *15 (E.D. Tex. May 1, 2020). ReplyBr. 3. But *Canon* is a *different* patent, with a *different* prosecution history, covering *different* technology—thus, whether "control unit" or "control" imparted sufficient structure to the *Canon* POSA, absent a showing that person is the same as the '020 POSA (which they are not[3]), is irrelevant to whether sufficient structure exists here. Similarly, that the *Canon* claim language, which is drastically different than claim 6, failed to invoke m-p-f is inapposite. Indeed, WSOU's brief confirms claim 6's language only describes functionality. DefBr. 8. Since the term "control unit" is limited *only* by its function, it must be construed as m-p-f. Given that WSOU does not contest Defendants' identification of corresponding structure, if the term is definite, it should be construed to require Defendants' proposed structure.

### C. "bus system" (claims 1 and 6)

WSOU concedes that the specification states the communication network can be a "(a) 'bus system' and (b) '[i]t is **however** also possible' for communication network KN to include 'active components such as switching nodes, gateways, routers, [or] bridges.'" ReplyBr. 4. WSOU somehow interprets these statements to mean that a bus network *may* include such active components, arguing that "there is no suggestion that (a) and (b) were being contrasted." *Id*. This

---

[3] The *Canon* patent relates to "conventional [tv] broadcasts and internet streaming broadcasts on a [TV]." *Id*. at *5. Plaintiff there asserted that a POSA would have a university education and "two or more years' work experience with digital [TV] and streaming technology." *Canon*, No. 18-cv-546, D.I. 91-9 ¶ 36. The '020 patent does not discuss digital TV and streaming technology.

3

ignores the use of "however," which unambiguously **contrasts** (a) and (b).  *Baldwin v. New York*, 2015 WL 6696505, at *2 (W.D.N.Y. Nov. 2, 2015) ("however" "creat[ed] a contrast").[4]  In other words, the patent contrasts a communication network that is a "bus network" with one that is not (*i.e.*, one with "active components").  This is exactly how the examiner interpreted these statements when addressing a "bus system."  DefBr. 10 (quoting Ex. 8).

WSOU attempts to dismiss the prosecution history by stating that applicant's silence in the face of the examiner's interpretation of "bus system" cannot amount to disavowal.  ReplyBr. 4.  While it is not necessary to find disavowal here since the specification clearly distinguishes a "bus system" from other networks, WSOU nonetheless relies on inapposite law.  In *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373–74 (Fed. Cir. 2003)—upon which WSOU relies—the application was allowed on grounds **unrelated** to the examiner's characterization.  In contrast, the limitation here was expressly related to patentability.  It was added to overcome prior art.  DefBr., Ex. 3 at 2 (adding "bus system"); *id*., Ex. 3 at 8–9 (arguing reference "does not teach or suggest that 'the communication network is a bus system'").  That the claims were prosecuted expressly based on the interpretation of "bus system" Defendants propose, is highly germane to claim construction here.

## II.   DISPUTED TERM FROM THE '489 PATENT

### A.   "the first set of port interfaces of the multi-chassis link aggregate" (claims 1, 8, 15)

This term lacks an antecedent basis and is strikingly similar to a term the Federal Circuit held to be indefinite.  *See* DefBr. 12–13.  Just like the term in *Bushnell*, a POSA would not have understood to which set of port interfaces this term refers.  *Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*, 813 F. App'x 522 (Fed. Cir. May 14, 2020).  WSOU has no answer to this

---

[4]  *Mayes v. E.P.A.*, 2008 WL 65178, at *16 (E.D. Tenn. Jan. 4, 2008) ("however" is an exception).

ambiguity and tellingly ignores the *Bushnell* case in its reply. ReplyBr. 4–5. Instead, WSOU merely parrots its opening brief argument, declaring: "'the first set of port interfaces' [] refers back to the 'first set of member port interfaces of the aggregation switch.'" The fundamental problem with WSOU's argument is that ***this is not what the claims say***. The claims refer to "the first set of port interfaces ***of the multi-chassis link aggregate***," not "of the aggregation switch." WSOU effectively seeks to re-write the claims, which is forbidden. *K-2 Corp. v. Valomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999). Adding to the ambiguity, the claims recite sets of "***member*** port interfaces" when referring to a single aggregation switch, and a set of non-member "port interfaces" when referring to the multi-chassis link aggregate. *See* '489 patent, cl. 1; *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

WSOU attempts to sidestep this obvious inconsistency in claim language by arguing that the first set of port interfaces became a part of the multi-chassis link aggregate when it was combined with a set of port interfaces from a remote switch. ReplyBr. 5. This, however, is precisely why the term is indefinite: there are three different sets of port interfaces of the multi-chassis link aggregate to which the claims could be referring: (1) the set from the aggregation switch, (2) the set from the remote switch, or (3) the combination of both sets. This lack of clarity renders the claims indefinite under *Bushnell*. *See* DefBr. 13.[5]

---

[5] WSOU also incorrectly argues that Defendants' IPR somehow precludes any argument that the claims are indefinite. Claim construction is only performed in the IPR to the extent necessary to resolve the IPR. *Well-man, Inc. v. Eastman Chem. Co.,* 642 F.3d 1355, 1361 (Fed. Cir. 2011). Here, the prior art reference discloses the exact same multi-chassis link aggregation system as in the '489 patent. As such, notwithstanding the indefiniteness of the claims, Defendants showed that the prior art disclosed this limitation based on WSOU's infringement read. *See Spherix Inc. v. Matal,* 703 F. App'x 982, (Fed. Cir. 2017) (affirming the PTAB where the petitioner adopted the patentee's claim constructions at the district court).

Dated: April 14, 2021	By:	/s/ Barry K. Shelton
			Barry K. Shelton
			Texas State Bar No. 24055029
			bshelton@sheltoncoburn.com
			**SHELTON COBURN LLP**
			311 RR 620, Suite 205
			Austin, TX 78734-4775
			Telephone:  512.263.2165
			Facsimile:  512.263.2166

			Benjamin Hershkowitz
			bhershkowitz@gibsondunn.com
			Brian A. Rosenthal
			brosenthal@gibsondunn.com
			Allen Kathir
			akathir@gibsondunn.com
			Kyanna Sabanoglu
			ksabanoglu@gibsondunn.com
			**GIBSON, DUNN & CRUTCHER LLP**
			200 Park Avenue
			New York, NY 10166-0193
			Telephone:  212.351.4000
			Facsimile:  212.351.4035

			Y. Ernest Hsin
			ehsin@gibsondunn.com
			Jaysen S. Chung
			jschung@gibsondunn.com
			**GIBSON, DUNN & CRUTCHER LLP**
			555 Mission Street, Suite 3000
			San Francisco, CA 94105-0921
			Telephone:  415.393.8200
			Facsimile:  415.393.8306

			Ryan K. Iwahashi
			riwahashi@gibsondunn.com
			**GIBSON, DUNN & CRUTCHER LLP**
			1881 Page Mill Road
			Palo Alto, CA 94304-1211
			Telephone:  650.849.5300
			Facsimile:  650.849.5333

			*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 14, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
